**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| MICHAEL MILLER and ADRIANA PEREZ, individually and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>BEXAR COUNTY, TEXAS<br><br>Defendant. | Civil Action No:<br>5:23-CV-00085<br><br>FIRST AMENDED<br>CLASS ACTION COMPLAINT<br>JURY TRIAL DEMANDED |

Plaintiff Michael Miller and Adriana Perez, individually and on behalf of others similarly situated (collectively, the "Class"), for their Complaint, allege as follows:

**PRELIMINARY STATEMENT**

1. Time is the most expensive luxury in the world. It is something you spend and never get back, but you never know how much you have left. "The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships." *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975).

2. For years thousands of presumptively innocent detainees were jailed in the Bexar County Jail for hours or days in violation of court orders entitling them to release upon posting bail. Bail serves an important function in the criminal justice system. As the Supreme Court recognized in *Stack v. Boyle*, 342 U.S. 1, 4 (1951), "[t]his traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. Unless the right to bail before trial is

preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning."

3. Each day, hundreds of defendants have bail set by judges in Bexar County. If the defendant can post the bail affixed by the judge, the criminal defendant is entitled to be released from detention without delay. Every day, friends, family members, and bail bondsmen post bonds for presumptively innocent persons who are in the Bexar County jail. And every day, those defendants wait hours—sometimes days—before they are actually released from custody despite having their bail posted and no justification for their prolonged detention existing.

4. Once the sheriff's office accepts bail, the defendant should be released within a few hours, as soon as the criminal defendant can be checked for outstanding holds and warrants. Instead, criminal defendants often languish for days—in some cases a week—even though they are entitled to release and there is no lawful basis for continued restraints on their liberty. Courts have uniformly held that overdetentions are unconstitutional.

5. Plaintiff brings this civil rights lawsuit on behalf of himself and those similarly situated to remedy the violation of their rights secured by the United States and Texas Constitutions.

## JURISDICTION AND VENUE

6. This action arises under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and Texas state common law.

7. This Court has subject matter jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff's claim arises under 42 U.S.C. § 1983. Plaintiff seeks redress of the deprivation, under color of state law, of rights guaranteed by the Constitution of the United States.

8. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

9. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant Bexar County resides in this judicial district and Plaintiff's claims arose in this judicial district.

10. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

11. Plaintiff demands trial by jury in this action.

## PARTIES

12. Plaintiff Michael Miller is a citizen of United States and a resident of Texas.

13. Plaintiff Adriana Perez is a citizen of the United States and a resident of Texas.

14. Defendant Bexar County is a municipal corporation organized under the laws of the State of Texas. Process for Bexar County may be served on Peter Sakai, County Judge, who is located at 101 W. Nueva, 10th Floor, San Antonio, Texas, 78205. Sheriff Javier Salazar is the Sheriff of Bexar County. Sheriff Salazar is responsible for the Bexar County Sheriff's Department, Bexar County jails, and Bexar County's inmates.

## FACTS

15. Texas Code of Criminal Procedure article 17.02 mandates that bail is the security given by the accused that he will appear and answer before the proper court for the accusation brought against him.

16. When the accused has given the required bond, either to the magistrate or the officer having him in custody, he shall at once be set at liberty. Tex. Code Crim Proc. 17.29.

17. The Bexar County Sheriff's Department is a division of Bexar County and operates the Bexar County Jail. The Sheriff's Department detains inmates at the Bexar County Jail after their arrest. The deputies and employees of the Sheriff's Department are authorized by

County policy to accept bail money, release an arrestee, and set a time for an arrestee's appearance in court.

18. The Sheriff's Department is operated by the Bexar County Sheriff Javier Salazar. The Sheriff is the final policymaker for all law enforcement decisions for Bexar County.

19. Bexar County is responsible for booking all arrested persons who are charged with committing a Class B misdemeanor or higher in Bexar County. Magistration services for these arrested persons are provided by Bexar County judges.

20. Bexar County and Sheriff Salazar are responsible for Bexar County's policy and practice of refusing immediate release to individuals that have posted their bonds and are otherwise entitled to a timely release from custody. In particular, Sheriff Salazar oversees and is responsible for Bexar County's decisions on when to release detainees who have already posted their required bond. As explained more fully below, Plaintiffs were overdetained by Bexar County without justification.

21. The Bexar County Adult Detention Center is the 16th largest jail in the country with a maximum housing capacity of 5,106 inmates.[1] In 2020, with approximately 27,924 total bookings the BCADC averaged a daily population of 3,787.

22. Despite, clear and unambiguous law, the Defendant has repeatedly displayed indifference to the rights of presumptively innocent pre-trial detainees by holding detainees without justification for extended periods of time after their bonds have posted and they are entitled to release.

23. Once bail is paid, the pre-trial detainee is theoretically processed for release. Routinely, it can take 48 hours or more for a detainee to be released after bail is posted. Pre-trial

---

[1] https://www.bexar.org/DocumentCenter/View/28817/Bexar-County-Sheriffs-Office-Prison-Rape-Elimination-Act-PREA-2020-Annual-Report-PDF?bidId=

detainees often times are not released for up to ninety-six (96) hours after their bail has been posted.

24. Bexar County on its website represents that the "average time for release may be four (4) to six (6) hours from the time of bond approval."[2] Despite this representation on its website, Bexar County continually overdetains Plaintiff and Class members without justification.

25. These delays in processing detainees for release after bail has been posted results not from any legitimate governmental prerogative, but from indifference and administrative convenience.

26. Despite being aware of the complaints of overdetention in the County jail, the Defendant has failed to implement a system to expedite the process of release for detainees who have paid their bails. The Defendant is aware that they have failed to timely process release but have done nothing while Plaintiff and the Class members waited for release after their bonds were posted without any legitimate justification.

27. The Sheriff is responsible for receiving bails paid for the release of Plaintiff and the Class Members.

28. Because the Sheriff receives the bail moneys for the release of detainees, Defendant knows when a detainee has posted bail and thus is entitled to be released.

29. The misconduct which Plaintiff was subjected was caused by the policies, practices, and customs of Defendant, in that its employees and agents regularly overdetain persons who are subject to release. Those widespread practices of overdetention are so well settled as to constitute a de facto policy of the Defendant. The significant pattern of overdetention at Bexar County Jail such that the pattern is tantamount to an official policy.

---

[2] https://www.bexar.org/3090/PR-Bonds#:~:text=The%20time%20of%20release%20from,unforeseen%20problems%20and%20possible%20delays.

**BEXAR COUNTY HAS THE RESOURCES TO PROCESS DETAINEE RELEASES
ON A CONSTITUTIONAL BASIS BUT REFUSES TO DO SO**

30. The Bexar County Sheriff's Office has nearly 1900 employees and a $135 million operating budget.[3] BCSO is the 11th largest sheriff's office in the country.[4]

31. Additionally, the Sheriff three times in 2022 requested the approval of additional overtime pay for deputies from the County. The County approved 68,912 overtime hours in January of 2022 and 67,753 overtime hours in April.[5] In total the County has approved 140,000 hours of overtime pay for deputies.

32. By all accounts, the County spent over five million dollars in overtime pay in 2022.[6]

33. The County has the capacity using its existing resources and personnel and without the need for any additional funding to release Class members within a constitutionally permissible timetable but because of an insistence on using batch releases the County routinely overdetains detainees in the County Jail.

**BEXAR COUNTY IS AWARE OF ITS DELAYS RELEASING INMATES**

34. In April of 2017, the County voted to proceed with a plan to redesign its plan for the South Unit of the Bexar County Jail. The purpose of the redesign was to include an intake center for persons taken into custody to be magistrated.

35. For years, the County operated the city owed Frank Wing Building as a central magistration center. Thus, anyone arrested in Bexar County would be taken to the Wing Building to be magistrated and have their bail set.

---

[3] http://www.bcsocareers.com/about-the-bexar-county-sheriffs-office.html
[4] *Id.*
[5] https://www.mysanantonio.com/news/local/article/Bexar-County-Sheriffs-deputies-jail-overtime-pay-17255946.php
[6] https://www.mysanantonio.com/news/local/article/Bexar-County-sheriff-to-exceed-overtime-pay-16807149.php

36. Tony Fabelo, a consultant hired by the County found that the County loses more than $1.7 million dollars a year because of processing delays for prisoner releases which averaged approximately eight (8) hours of delay per inmate.[7] [8]

37. In an effort to mitigate the overdetention of detainees the County voted to expand the jail and create a new central magistrate. The County is aware of its historic delays in processing inmates. With the use of the County's new facility the time of overdetentions have risen because the County has failed to adopt policies and procedures to avoid overdetentions. Similarly, the County's use of batch releases has without justification extend the amount of time that Plaintiff and Class members have stayed in custody after their bails have been posted.

### THE OVERDETENTION OF CODY FLENOURY IS ADDITIONAL NOTICE OF THE OVER DETENTION PROBLEMS PLAGUING THE COUNTY

38. One of the more extreme examples of the County's persistent policy of overdetention is Cody Demond Flenoury's ("Flenoury") case.

39. On January 10, 2019, Flenoury was placed into custody in the Bexar County jail. Before his trial Flenoury reached a plea deal. Flenoury was sentenced to "time served." In other words, the court imposed a sentence that was completely satisfied by Flenoury's previous time spent in custody.

40. The court with jurisdiction over his case transmitted Flenoury's release paperwork to the Sheriff's Office. At the time of Flenoury's sentence he accrued 563 days in custody.

41. Flenoury would serve an additional five months in custody before being released despite the County having Flenoury's release order.

---

[7] https://www.virtualbx.com/construction-preview/bexar-county-to-add-magistration-intake-center-to-county-jail-complex/
[8] https://foxsanantonio.com/news/local/county-leaders-consider-257-million-annex-at-bexar-county-jail

42. After Flenoury's story was published in the news, the Sheriff's Office and County hired two outside consulting firms to evaluate the cause of the delay in releasing Flenoury and other deficiencies at the county jail.[9]

43. Defendants had actual or constructive notice that their failure to adopt policies regarding the persistent detention of pre-trial detainees resulted in constitutional violations.

44. Mr. Flenoury's case is a part of a pattern of similar constitutional violations due to deficient policies which evidences Defendants deliberate choice of policies causing violations of constitutional rights.

45. The Sheriff's Office hired consultants from Detain, Inc. the day after a story about Mr. Flenoury was published in Texas Public Radio. A second jail consultant was hired by the County to evaluate the issues in the jail.[10]

46. Tommy Calvert, a Bexar County Commissioner, stated that consultant's reports, "It should be one of the most comprehensive looks in a number of years at the detention issues."[11]

47. Despite the County's pattern of overdetention, Salazar has deliberately failed to act or implement policies to address Defendant's repeated overdetention of presumptively innocent detainees.

48. The County's system of administrative processing, in practice, amounts to a policy of deliberate indifference. Defendant has known about its pattern of overdetention for years and yet has failed to adopt policies to correct this problem and this failure to adopt training

---

[9] https://www.mysanantonio.com/news/local/article/2-consulting-firms-will-inspect-Bexar-County-Jail-16546053.php
[10] https://www.kens5.com/article/news/local/bexar-county-sheriffs-office-approval-for-140000-overtime-hours-jail-deputies-san-antonio/273-64d692b0-3ca0-4c1e-8f3a-f9b5fb558420
[11] *Id.*

or disciplinary policies to address it constitutes deliberate indifference to Plaintiffs'
constitutional rights to timely release.

49. Defendant was aware of the pattern of overdetentions as early as 2017 and in 2019 upon
the publishing of the article regarding Mr. Flenoury. Despite being aware of the pattern of
overdetentions in 2019, Defendant has not implemented a system to prevent the detention
of Plaintiff and the Class members. The Defendant continues to use a batch release system
that caused Plaintiff and the Class members to spend additional time in custody without
justification.

**THE COUNTY JAIL UTILIZES A BATCH RELEASE SYSTEM THAT CAUSES
ADDITIONAL DELAYS IN RELEASING INMATES**

50. A captain or lieutenant in the booking operations branch must sign off on each detainee's
release. Deputies thus wait until there are a sufficient number of bailed out detainees
formed so that a captain can sign off on the whole group at once. This can force a detainee
who has already posted bail to wait hours until there are enough other detainees who have
posted bails to be released at once.

51. In a similar vein, rather than return each bailed detainee's property and process releases
promptly after bail has been paid, the Sheriff's Office waits until there are a mass of
detainees and processes their release as a group. While awaiting release, detainees who
have been bailed out are moved from holding cells and held in a special cell or holding
area designated specially for inmates whose bails have been posted. Only when this area
fills up are all of the detainees present processed for release at once.

52. The Sheriff's Office maintains cells for people who have already been bailed out and
therefore are not subject to confinement.

53. The County and the Sheriff's Office has been aware of the systemic problems and delays in the processing of bail payments and the widespread problem of resulting overdetentions. Plaintiff and Class members made complaints about the delays in their release.

54. The Defendants have detained members of the Class for many hours or days without any legitimate governmental necessity.

55. These overdetentions resulted from the County's unconstitutional polices, practices, usages and/or customs and from its unlawful deliberate indifference to the constitutional rights of Class members.

### BEXAR COUNTY UNNECESSARILY DELAYS RELEASE OF INMATES BECAUSE OF GPS MONITORS WHICH ARE READILY AVAILABLE

56. Magistrate Judges are tasked with ordering the release conditions of pretrial detainees.

57. A Magistrate may order that a detainee as a condition of their release be subjected to global positioning system ("GPS") monitoring. GPS is a satellite-based navigation system used to provide intensive monitoring and supervision of a detainees' movement at all time.

58. Similarly, a magistrate may order that a detainee be subjected to electronic monitoring ("EM") which is a radio frequency tether that continuously verifies the defendant's presence or absence at the defendant's home.

59. The County administers the GPS/EM program and the Plaintiff has no control over when a GPS/ELM monitor is placed on detainee.

60. The County decides when a detainee will receive a GPS monitor. Once a detainee pays his bail, the County begins to process the detainee for release. When GPS/EM conditions are present, only the County can fit a detainee with a GPS/EM monitor. A detainee can do nothing to obtain a monitor to expedite a detainee's release. A detainee is at the County's mercy when it comes to obtaining a GPS/EM monitor.

61. The County's failure to implement a system to expedite the process of release for detainee includes its failure to have GPS/EM monitors readily available for detainees who post their bail and are required to be released.

62. On October 14, 2019, Albert Polito posted bond and was released without a GPS monitor despite a magistrate ordering that as a condition of Polito's release he was required to be fitted with a GPS monitor.

63. After Polito's re-arrest, the Bexar County Sheriff's Office enacted a new policy that required the County's pretrial services to sign off on detainees being released.[12] Without the signature of a pretrial services officer, a detainee with GPS conditions will not be released or fitted for a monitor even if the detainee has paid their bail.

64. The Sheriff failed to supervise his deputies to make sure that deputies were obtaining pretrial's signature on class member's release documents in order to process Plaintiff's release in a constitutionally permissible timeline. The Sheriff failed to train his deputies to obtain pretrial's signature on class member's release documents in order to process Plaintiff's release in a constitutionally permissible timeline.

***Plaintiff Michael Miller***

65. On October 28, 2022 at 7:24 a.m., Plaintiff Miller was arrested and taken into custody.

66. Plaintiff was transported to the Bexar County Jail.

67. On the same day at approximately 12:31 p.m., Plaintiff's bond was set at $3,500.00 by a magistrate judge. Plaintiff was entitled to release upon his bond being posted.

---

[12] https://www.ksat.com/news/2019/10/25/inmate-released-without-gps-monitor-at-bexar-county-jail/

68. A couple of hours later at approximately 3:11 p.m., Plaintiff's bond was posted. At this time the Bexar County District Clerk's Office's records showed "BOND MADE 3500.00 1994029." The next County Clerk entry shows "REL'D ON BOND."

69. Plaintiff did not have any holds or warrants. Thus, Plaintiff was entitled to be released without delay because there was no judicial order mandating his confinement. Bexar County's failure to provide immediate release on bond offended state law. Under state law, the accused must "shall at once be set at liberty" upon payment of bond. Tex. Code Crim. Proc. § 17.29(a). The County did not have any legal justification to hold Plaintiff once his bail had been paid.

70. Plaintiff was still in the Defendant's custody, despite County records acknowledging that Plaintiff had posted bond. Plaintiff was not released that evening but instead was transferred to general population despite his bond being posted.

71. Plaintiff was required to be fitted with a County issued GPS/EM monitor. The County had monitors available but did not fit Plaintiff will the monitor. Because the County Sheriff will not process a detainee for release until County's pretrial services signs off on the release Plaintiff stayed in custody for three additional days.

72. Plaintiff alerted the deputies on duty that his bond had been posted but the deputies did not investigate the matter further. Plaintiff while in the Defendant's custody received a copy of the affidavit of surety reflecting that a bond had been posted on his behalf.

73. Plaintiff spent October 29th, 30th, and 31st in custody despite posting bond.

74. On November 1, 2022, Plaintiff was transferred from general population to a holding cell.

75. Plaintiff waited hours in the holding cell with other detainees who had made bail. Plaintiff spent an additional three days in custody waiting to be released after his bond had been

posted because the County employs a batch release system and will not release a detainee until a critical mass of detainees is present.

76. The Sheriff did not supervise his deputies and employees. The County accepted Plaintiff's bail payment but because the Sheriff did not supervise his deputies to ensure that the deputies promptly obtained a GPS monitor from pretrial services Plaintiff was not released in a constitutional manner. In a similar vein, the Sheriff enacted a policy that required pretrial services to sign off on the release of each detainee. The Sheriff failed to supervise deputies to make sure that the deputies and staff would obtain pretrial's signature in a quick enough manner to not overdetain Plaintiff. The Sheriff failed to train the deputies to ensure that the deputies could obtain pretrial signature and release the Plaintiff and Class members in a constitutional manner. The Sheriff enacted a policy that detainees would not be released unless there was a critical mass of detainees. The Sheriff failed to supervise his deputies and allowed the deputies to keep Plaintiff in custody in excess of a reasonable amount of time after Plaintiff had posted his bail. If the Sheriff had been supervising his deputies it would have been readily apparent that Plaintiff and class members were being overdetained. All of these failures whether collectively or singularly caused Plaintiff to remain in custody in excess of a reasonable amount of time after Plaintiff's bail was posted. All of the class members suffered from the Sheriff's failure to train and supervise his deputies.

77. There was no justification or excuse for Plaintiff's overdetention. Plaintiff was not released until approximately 72 hours after the Sheriff's Office accepted Plaintiff's bail payment.

***Plaintiff Adriana Perez***

78. The County's records show, Perez was arrested and magistrated on February 7, 2022.

79. The magistrate fixed Perez's bail at $3,500. Perez's bail was posted on February 8. 2022.

80. Plaintiff did not have any holds or warrants. Thus, Plaintiff was entitled to be released without delay because there was no judicial order mandating her confinement. Bexar County's failure to provide immediate release on bond offended state law. Under state law, the accused must "shall at once be set at liberty" upon payment of bond. Tex. Code Crim. Proc. § 17.29(a). The County did not have any legal justification to hold Plaintiff once his bail had been paid.

81. County records show that Perez was "REL'D ON BOND" on December 8, 2022 but in fact Plaintiff remained in custody for an additional forty-eight (48) more hours. Ultimately, Plaintiff left the County's custody on December 10, 2022.

82. Because the County employs a batch release system, Perez was not released from custody until a critical mass of other detainees were present in the holding cell despite Perez being entitled to release at the time her bail was posted.

83. Plaintiff waited hours in the holding cell with other detainees who had made bail.

84. The Sheriff did not supervise his deputies and employees. The County accepted Plaintiff's bail payment but because the Sheriff did not supervise his deputies to ensure that the deputies promptly processed Plaintiff for release in a constitutional manner. The Sheriff enacted a policy that detainees would not be released unless there was a critical mass of detainees. The Sheriff failed to supervise his deputies and allowed the deputies to keep Plaintiff in custody in excess of a reasonable amount of time after Plaintiff had posted her bail. If the Sheriff had been supervising his deputies it would have been readily apparent that Plaintiff and class members were being overdetained. The Sheriff did not supervise his deputies to make sure that the deputies were processing Plaintiff and the class members for

release. All of these failures whether collectively or singularly caused Plaintiff to remain in custody in excess of a reasonable amount of time after Plaintiff's bail was posted. All of the class members suffered from the Sheriff's failure to train and supervise his deputies.

85. There was no justification or excuse for Plaintiff's overdetention. Plaintiff was not released until approximately 48 hours after the Sheriff's Office accepted Plaintiff's bail payment.

86. As the final policy maker for the County, the Defendant is responsible for establishing policies and procedures for the prompt release of detainees who have posted their bails.

87. Plaintiff's overdetention resulted from the County's unconstitutional polices, practices, usages and/or customs and from its unlawful deliberate indifference to the constitutional rights of Class members. Defendant's policies include not processing Plaintiff for release until County pretrial services signs off on the release when Plaintiff has posted bail and not releasing Plaintiff until a critical mass of detainees who have posted their bails are present.

88. Defendants' failure to adopt safeguards to protect against the overdetention of Plaintiff and the Class members despite knowing the County's pattern of overdetaining presumptively innocent detainees violated Plaintiff and the Class member's rights to be timely released from custody.

89. Plaintiff and the Class members have a right to be timely released from custody. Their overdetention or detention absent legal process violates their right to due process. Plaintiff were overdetained by the County. The County held Plaintiffs even after they paid bail or otherwise should have been released.

90. The County's practice of detaining individuals after they have posted bail and are otherwise entitled to release, denies Plaintiff their rights under the Fourth Amendment to the United States Constitution. After individuals have posted their bails, and there is no legal

justification to detain them the County has no authority to detain that satisfies the Fourth Amendment. The County and Sheriff Salazar are responsible for the County's policy of detaining individuals that have posted their bonds, even after those individuals otherwise would be released, and are thus responsible for this constitutional violation.

91. Plaintiffs were harmed by the above-mentioned policies because Plaintiffs spent more time in custody than they were legally required to spend. Plaintiffs right to timely release from custody was clearly established at the time the County received their release paperwork and that their delay in securing Plaintiffs' release has been objectively unreasonable in light of the clearly established law.

92. The County failed to implement, supervise, and train on policies to prevent the unlawful overdetention of persons whose bails had been posted and were held without judicial authority. The County was on notice, whether constructive or actual, that its flawed release procedures as stated more fully above resulted in the overdetention of Plaintiff and the Class but did not take prompt corrective or responsive action. Further, the County failed to establish policies whereby its staff would take prompt corrective and responsive action upon receipt of an allegation of overdetention.

93. The County Sheriff enacted the policy requiring pretrial services to sign off on the release of each detainee with a GPS/EM restriction. The Sheriff will not process a detainee for release until pretrial services signs off on the release of the detainee even when a Plaintiff posts bail. Plaintiff remained in custody after paying his bond and receiving a GPS monitor because of the Sheriff's policy. Plaintiff had to wait an additional seventy-two (72) hours while the County waited for pretrial services to sign off on Plaintiff's release.

**CLASS ACTION ALLEGATIONS**

94. Plaintiff brings this suit as a class action under Federal Rule of Civil Procedure 23(b)(3), on behalf of themselves and other individuals similarly situated who (a) were detained in the Bexar County Jail; (b) received a judicial ordered fixing bail; (c) posted bail; and (d) were not released from County custody within a reasonable time after said bail was posted on their behalf.

95. All of the members of the Class were injured as a result of Defendants' conduct.

96. On information and belief, bail is posted in over 15,000 criminal cases in Bexar County annually, and a substantial number of the defendants in those cases are members of the Class. Accordingly, the members of the Class are so numerous that joinder of all Class members is impracticable.

97. The questions of law and fact presented by Plaintiff are common to other members of the Class. Among other, the questions of law and fact common to the Class are:

    a.  Whether the Constitution imposes limits on the length of time for which the County may lawfully detain a criminal defendant after the defendant has posted bail.

    b.  Whether the County has exceeded those limits with respect to the Class;

    c.  Whether the County has had a policy, custom, usage and/or practice of detaining individuals for prolonged periods after they had posted or sought to post bail.

    d.  Whether such a policy, if found to have existed, violates the United States Constitution and/or Texas law;

    e.  Whether the County has applied its policies, including those with respect to the processing of bail payments and the release of detainees from jail upon deposit of their bail amount, in an unconstitutional manner;

f.   Whether the County has acted with deliberate indifference to the rights of Class members by detaining them for prolonged periods after they had posted or sought to post bail; and

g.   Whether members of the Class are entitled and, if so, the nature and extent of that relief, including without limitation the amount of monetary damages.

98. Common issues of law and fact, including without limitation those set forth above, predominate over any individual issues.

99. The claims and practices alleged herein are common to all members of the Class.

100.   The violations suffered by Plaintiff are typical of those suffered by the Class, as all members of the Class were subjected to prolonged overdetentions in the Bexar County jail after posting bail. The entire Class will benefit from the monetary relief sought.

101.   Plaintiff has no conflict of interest with any Class members, is committed to the vigorous prosecution of all claims on behalf of the Class, and will fairly and adequately protect the interest of the Class.

102.   The class action is superior to any other method for the fair and efficient adjudication of this legal dispute, as joinder of all Class members is impracticable. The damages suffered by members of the Class, although substantial, are small in relation to the extraordinary expense and burden of individual litigation and therefore it is highly impractical for such Class members to attempt individual redress for damages.

103.   There will be no extraordinary difficulty in the management of this Class action.

**FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983—Plaintiff and those similarly situated**

104.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs of this complaint with the same force and effect as though set forth herein.

105.    Bexar County had and has had a de facto policy of improperly delaying the release of detainees who have posted bond and are entitled to release, failing to implement a system for the prompt release of detainees who have posted bond and are entitled to release.

106.    The County, including final policy makers at the Sheriff's Office, and the County Judge himself, have been aware of the problems in this Complaint since at least 2017, and likely much longer. These same final policymakers knew the situation and have done nothing to correct it.

107.    The County Sheriff enacted the policy requiring pretrial services to sign off on the release of each detainee with a GPS/EM restriction. The Sheriff will not process a detainee for release until pretrial services signs off on the release of the detainee even when a Plaintiff posts bail. Plaintiff remained in custody after paying his bond and receiving a GPS monitor because of the Sheriff's policy. Plaintiff and the putative class had to wait an additional seventy-two (72) hours while the County waited for pretrial services to sign off on their releases. The class members spent unjustified and unwarranted additional time in custody because of this unconstitutional policy.

108.    The Sheriff enacted a batch release system where the detainees who have posted bail are forced to wait until there is a sufficient number detainees who have posted bail. Thus, members of the class are forced to wait for their release even though they have posted bail and are entitled to release. Deputies wait until there are a sufficient number of bailed out detainees formed so that a captain can sign off on the whole group at once. This can

force a detainee who has already posted bail to wait hours until there are enough other detainees who have posted bails to be released at once.

109.     County administrators, policymakers, the Sheriff,  supervisors, and employees caused the unjustified overdetention of Plaintiff and all other members of the Class by deliberate indifference to the risk of constitutional injury from overdetention arising from, inter alia: Unnecessary delays between payment and release processing resulting from the County's preference for releasing batches of bailed detainees; the use of designated areas to continue holding inmates who have already been bailed out, despite the absence of any legal authority for their continued detention; the County's failure to assign adequate staff to the bail processing system, and/or the failure to train and/or supervise County staff to ensure and effectuate the prompt release of detainees whose bails have been paid or sought to be paid within a reasonable amount of time after payment.

110.     The County has had a policy, practice, custom, and/or usage of detaining criminal defendants longer than reasonably necessary after they posted bail, thereby causing the unjustified overdetention of Plaintiff and all other members of the Class.

111.     Overdetaining a presumptively innocent criminal defendant who has posted or sought to post bail is an unreasonable seizure and a deprivation of liberty without due process of law and thus violates the Fourth and Fourteenth Amendments to the United States Constitution.

112.     At all relevant times, Defendant acted under pretense and color of state law, and its acts were without authority of law and in abuse of its powers.

113.     Defendant's policy, practice, and/or custom of continuing to detain individuals after the lawful reason for detention has ended constitutes deliberate indifference and violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constiution.

114.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff and all other members of the Class suffered loss of liberty and other damages to be determined at trial.  As a direct and proximate cause of Defendant's unlawful policy, practice, and/or custom, Plaintiffs and a class of similarly situated individuals whom they seek to represent suffered violations of their constitutional rights and are entitled to monetary damages for their injuries.

115.     The County's actions violate the most basic rights afforded by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

116.     WHEREFORE, Plaintiff, on behalf of the Class, requests the following relief as against Defendants:

a.   An order certifying this suit as a class action pursuant to Federal Rule of Civil Procedure 23;

b.   A judgment declaring that Defendants have committed the violations of law alleged in this action;

c.   Compensatory damages against Defendant in amount to be proven at trial, together with interest as allowed by law;

d.   An order awarding Plaintiff reasonable attorneys' fees, together with the costs and disbursements of this action, pursuant to 42 U.S.C. § 1988 and the inherent powers of this Court; and

e.   Such other and further relief that may be just and proper.

Respectfully Submitted,

THE MAJOR LAW FIRM PLLC

**By:** **/s/ *Abasi D. Major*** _____
Abasi D. Major
Texas Bar No. 24096504
901 NE Loop 410
Suite 405
San Antonio, Texas 78209
Ph: 210-957-1767
Fx: 210-783-9637
abasi@themajorlawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on March 7, 2023, a true and correct copy of the above and foregoing document was served on all parties of record in accordance via the CM/ECF System.

/s/Abasi D. Major _____
Abasi D. Major