UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MICHAEL A. MILLER and ADRIANA PEREZ, individually and on behalf of similarly situated individuals,<br><br>  *Plaintiffs*,<br><br>v.<br><br>BEXAR COUNTY,<br><br>  *Defendant*. | 5:23-cv-00085-OLG |

### BEXAR COUNTY'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Now comes Defendant Bexar County and files this Motion to Dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

### I. SUMMARY OF SELECTED BACKGROUND AND ARGUMENT

1. In their First Amended Complaint, Michael A. Miller and Adriana Perez ("Plaintiffs") each assert one claim against Bexar County related to their respective detentions at the Bexar County Adult Detention Center ("Bexar County Jail") as pretrial detainees: a claim for violations of the "Fourth, Fifth, Eighth, and Fourteenth Amendments" under 42 U.S.C. § 1983. Docket no. 8 at 21. Plaintiffs allege, in sum, that they were detained unreasonably long because Bexar County had a "de facto policy of improperly delaying the release of detainees who have posted bond and are entitled to release, [and] failing to implement a system for the prompt release of detainees who have posted bond and are entitled to release." Docket no. 8 at 19.

2. Plaintiff Michael Miller alleges that he was arrested and booked on October 28, 2022, that the magistrate set his bond at $3,500.00, and that he paid bail on the same day, but was only

Bexar County's Motion to Dismiss First Amended Complaint
*Michael A. Miller v. Bexar County*
5:23-cv-00085-OLG    1 of 14

released from custody on November 1, 2022. Docket no. 8 at 11-12. In support of his allegations, Plaintiff refers to "Bexar County District Clerk's Office's records" that show that Plaintiff paid a bond of $3,500.00 on October 28, 2022.[1] *Id*. at 12. Plaintiff alleges that after he paid bond, he was "entitled to be released without delay because there was no judicial order mandating his confinement." *Id*. Plaintiff states that "The County did not have any legal justification to hold Plaintiff once his bail had been paid" and that "County records acknowledg[ed] that Plaintiff had posted bond." *Id*.

3.      Confusingly, notwithstanding his assertion that Bexar County had no "legal justification" to continue detaining him after he paid his bail amount, Plaintiff Miller also alleges that a condition of his bond was that he wear a global positioning system ("GPS") device, and that his release was delayed after he paid bond because he was not fitted promptly with a GPS device. Docket no. 8 at 12. Plaintiff Miller alleges that the Bexar County Sheriff's Office "enacted a . . . policy that required the County's pretrial services to sign off on detainees being released" when the detainee was required to wear a GPS device as a condition of bond. *Id*. at 11. Plaintiff Miller alleges that the Bexar County Sheriff "failed to supervise deputies to make sure that the deputies and staff

---

[1] The Bexar County Clerk and District Clerk's online records for Plaintiff's criminal case, the magistrate's special conditions of release on bond, and a County record regarding Plaintiff Miller's GPS device are attached hereto as Exhibits A, B, and C, respectively. Although Plaintiff does not attach these records to his First Amended Complaint, "[a] court may consider documents incorporated into the complaint by reference when considering a motion to dismiss… The court may also consider any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *330 Cedron Tr. v. Citimortgage, Inc*., No. SA-14-CV-933-XR, 2015 WL 1566058, at *2 (W.D. Tex. Apr. 8, 2015) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007) and *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)). Plaintiff references the records multiple times and they are central to his argument that he was entitled to be released from jail after his bail payment was accepted. Docket no. 8 at 12.

Bexar County's Motion to Dismiss First Amended Complaint
*Michael A. Miller v. Bexar County*
5:23-cv-00085-OLG                                                                                          2 of 14

would obtain pretrial's signature in a quick enough manner to not overdetain Plaintiff." *Id*. at 13. Plaintiff further alleges that

> The Sheriff failed to train the deputies to ensure that the deputies could obtain pretrial signature and release the Plaintiff . . . in a constitutional manner. The Sheriff enacted a policy that detainees would not be released unless there was a critical mass of detainees. The Sheriff failed to supervise his deputies and allowed the deputies to keep Plaintiff in custody in excess of a reasonable amount of time after Plaintiff had posted his bail.

*Id*. at 13. Further still, Plaintiff Miller alleges that he "waited hours in [a] holding cell" to be released because of Bexar County's "batch release system[.]" *Id*. at 12-13. Plaintiff Miller alleges that he "remained in custody after paying his bond and receiving a GPS monitor because of the Sheriff's policy" and had to "wait an additional seventy-two (72) hours while the County waited for pretrial services to sign off on Plaintiff's release. *Id*. at 16

4.     Plaintiff Perez alleges that "the County's records show" that she was "arrested and magistrated on [December] 7, 2022" and that she posted bail on December 8, 2022. Docket no. 8 at 13-14.[2] Plaintiff Perez alleges that she "did not have any holds or warrants" and was "entitled to be released without delay because there was no judicial order mandating her confinement." *Id*. at 14. Plaintiff Perez alleges that "County records show" that she paid bond on December 8, 2022 but remained in custody for "an additional forty-eight (48) more hours" until being released on December 10, 2022. *Id*. Plaintiff Perez alleges that Bexar County "did not have any legal justification to hold Plaintiff" once her bail had been paid. *Id*. As with Plaintiff Miller, Plaintiff Perez alleges that her release was delayed because the Bexar County Sheriff employed a batch

---

[2]  Plaintiff Perez here writes "February 7, 2022" and "February 8, 2022" in the First Amended Complaint, but actually meant December 7, 2022 and December 8, 2022. The County's records regarding Plaintiff Perez's December 7, 2022 detention are therefore incorporated by reference into the First Amended Complaint and are attached hereto as Exhibit D.  *See* note 1 above.

Bexar County's Motion to Dismiss First Amended Complaint
*Michael A. Miller v. Bexar County*
5:23-cv-00085-OLG                                                                                                              3 of 14

release system, and did not supervise deputies to ensure detainees were not "overdetained" and were processed promptly. *Id*. at 14-15.

5.     Dismissal of both Plaintiffs' claims against Bexar County is appropriate because Plaintiffs fail to allege facts to show policies or practices of Bexar County sufficient to support a *Monell* claim. Further, the records referenced by and incorporated into Plaintiffs' First Amended Complaint negate Plaintiffs' argument that they were entitled to be released once they paid their bond. Each plaintiff was detained because of an underlying domestic violence charge and, therefore, had bond obligations beyond simply paying a certain bail amount. These obligations required additional, necessary steps in the administrative process before they could be released from the Bexar County Jail. Accordingly, the Court should grant Bexar County's motion to dismiss in its entirety.

## II.  LEGAL STANDARDS

6.     The sufficiency of a pleading to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) is evaluated under the two-step process outlined by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). First, the Court must identify the Complaint's factual allegations, which are assumed to be true, and distinguish them from any conclusory statements that are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678, 680-81. Second, the Court must assess whether the assumed-as-true factual allegations set forth a plausible claim to relief. This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense" to determine whether "the well-pleaded facts . . . permit the court to infer more than the mere possibility of misconduct[.]" *Iqbal*, 556 U.S. at 679. Ultimately, the claim is subject to dismissal if it lacks "factual content that

Bexar County's Motion to Dismiss First Amended Complaint
*Michael A. Miller v. Bexar County*
5:23-cv-00085-OLG                                                                                           4 of 14

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. ARGUMENT

**A.     Dismissal of Plaintiff Miller's *Monell* Claim Is Appropriate**

7.     To state a viable claim that a governmental entity is liable for a constitutional deprivation under 42 U.S.C. § 1983, Plaintiff must show that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Hicks-Fields v. Harris Cty., Texas*, 860 F.3d 803, 811 (5th Cir. 2017). Further, "County as opposed to individual liability has the additional requirement that the 'violation resulted from a [county] policy or custom adopted and maintained with objective deliberate indifference.'" *Baughman v. Hickman*, 935 F.3d 302, 307 (5th Cir. 2019) (quoting *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019)).

    **i.     Plaintiff Miller Does Not Plead Facts to Show An Official Policy or Practice**

8.     Plaintiff Miller has not pleaded facts sufficient to state any viable Section 1983 claim against Bexar County because he does not allege with requisite specificity that any official policy or widespread unofficial custom that was the cause of the constitutional deprivations he alleges.

9.     To the extent that Plaintiff Miller seeks to establish *Monell* liability based on an unconstitutional written or *de facto* policy, Plaintiff's First Amended Complaint falls short. An "official policy" that satisfies the first element of a 1983 municipal claim may include formally adopted policies of the entity, certain official acts of the entity's policymaking officials, and practices of the entity that are "so persistent and widespread as to practically have the force of law." *Hicks-Fields*, 860 F.3d at 808 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

Bexar County's Motion to Dismiss First Amended Complaint
*Michael A. Miller v. Bexar County*
5:23-cv-00085-OLG                                                                                                          5 of 14

10. To advance a claim of a municipal policy or practice beyond the pleading stage, "a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018).  When a plaintiff seeks to advance a municipal liability Section 1983 claim on the basis of a custom or practice of the entity, showing that the custom is "so persistent and widespread as to practically have the force of law" requires them to "do more than describe the incident that gave rise to [their] injury[.]"  *Hicks-Fields v. Harris Cty., Texas*, 860 F.3d 803, 808 (5th Cir. 2017); *Pena*, 879 F.3d at 622; *Ratliff v. Aransas Cty., Texas*, 948 F.3d 281, 284-85 (5th Cir. 2020); *Shepherd v. Dallas Cty.*, 591 F.3d 445, 454 (5th Cir. 2009).

11. Plaintiff's First Amended Complaint does not meet these pleading standards.  Plaintiff merely alleges that Bexar County and Sheriff Salazar have a "policy and practice of refusing immediate release to individuals that have posted their bonds and are otherwise entitled to a timely release from custody" and that Sheriff Salazar "oversees and is responsible for Bexar County's decisions on when to release detainees who have already posted their required bond."  Docket no. 8 at 4.  Plaintiff's "support" for this alleged policy and practice is a series of vague or conclusory statements such as "Bexar County continually overdetains Plaintiff and Class members without justification."  *Id*. at 5.  Or, that Bexar County's "employees and agents regularly overdetain persons who are subject to release."  *Id*. at 5.  These statements are not "specific facts" (*Pena*, 879 F.3d at 622) that can support a *Monell* claim.

12. At certain points, Plaintiff appears to try to present factual support, but falls short.  For example, Plaintiff alleges, without citation to any authority, and without any further specificity, that "[r]outinely, it can take 48 hours or more for a detainee to be released after bail is posted," and "detainees often times are not released for up to ninety-six (96) hours after their bail is posted."

Bexar County's Motion to Dismiss First Amended Complaint
*Michael A. Miller v. Bexar County*
5:23-cv-00085-OLG                                                                                                                                    6 of 14

Docket no. 8 at 4-5.  Plaintiff references a study purportedly showing that "processing delays" at the Bexar County jail for prisoner releases average "approximately eight (8) hours of delay per inmate."  *Id.* at 7.  This bare reference to one study does not contain any specific information regarding any instance of delayed release or its relation to Plaintiff Miller's case, and, further, the referenced study was conducted almost six years ago, in 2017, before Bexar County implemented a central magistration system.  *Id.* at 7 n. 8.  Plaintiff references the Cody Flenoury case, in which an inmate was detained for five months after a release order was issued.  *Id.* at 7-9.  Plaintiff does not plead facts to show how Flenoury's case relates to Plaintiff Miller's, much less does he identify multiple, similar cases sufficient to plead the existence of a pattern or practice.  Plaintiff references a follow-up study conducted after media attention to Mr. Flenoury's case, but Plaintiff does not discuss with specificity what it concluded or how it relates to the Plaintiff's case.  *Id.* at 8.  Plaintiff's vague and conclusory statements are insufficient to allege a pattern or practice.

13.     Plaintiff alleges that Bexar County employs a "batch release system" for releasing inmates, but does not allege facts regarding this system with requisite specificity.  Docket no. 8 at 9-10.  Plaintiff alleges that there is a delay in releasing inmates "until there are a sufficient number of bailed out detainees formed so that a captain can sign off on the whole group at once" and that the Bexar County Sheriff's Office "maintains cells for people who have already been bailed out and therefore not subject to confinement."  *Id.* at 9.  But Plaintiff presents no facts or law to support that this system results in unconstitutional delays in release, much less a pattern of such conduct that relates specifically to Plaintiff Miller's case.  Plaintiff's vague and conclusory statements regarding the batch release system are insufficient to allege a policy or practice.

14.     In sum, Plaintiffs' First Amended Complaint contains vague and general assertions about the Bexar County Jail and its performance that do not "point to the specific violation in question."

Bexar County's Motion to Dismiss First Amended Complaint
*Michael A. Miller v. Bexar County*
5:23-cv-00085-OLG                                                                                              7 of 14

*Peterson v. City of Fort Worth*, Tex., 588 F.3d 838, 851 (5th Cir. 2009) (holding that prior acts allegedly supportive of a pattern must be shown with "similarity and specificity"). Plaintiff Miller's allegations therefore do not plausibly support the existence of a policy or practice giving rise to a constitutional violation. Dismissal is appropriate.

      **ii.** **Plaintiff Miller Does Not Plead Facts to Show That an Alleged Unconstitutional Policy Was the "Moving Force" Behind His Allegedly Prolonged Detention**

15. Plaintiff fails to allege facts to support the "moving force" element of *Hicks-Fields* as well. Plaintiff fails to state a Section 1983 claim because he pleads facts negating that he "remained in custody after paying his bond and receiving a GPS monitor," and had to "wait an additional seventy-two (72) hours while the County waited for pretrial services to sign off on Plaintiff's release." Docket no. 8 at 16. Rather, the records referenced in, and incorporated into, his First Amended Complaint show that the delay Plaintiff experienced was a result of his failing to meet the conditions for receiving a GPS monitor, and that he in fact never received a GPS monitor.

16. Plaintiff was arrested on October 28, 2022 for violation of a protective order. Exhibit A at 3 (first entry for 10/28/2022). On the same day, Plaintiff was magistrated and he paid his $3,500.00 bond, with the clerk's records indicating "bond made 3500.00." *Id*. at 4 (second, third and eighth entries from top, capitalization removed). Also on the same day, Magistrate Judge Celeste Ramirez issued special conditions of release on bond, which subjected Plaintiff Miller to partial house arrest with a GPS device, prohibited him from possessing a firearm, and contained a 'no contact' order. *Id*. at 4 (last four entries). Thus, before Plaintiff Miller could be released on bond, he was required to be fitted with a GPS device. But, as County records show, as of 7:55 a.m. on October 31, 2022, Plaintiff could not be fitted with a GPS device because he had not yet met the criteria for being issued such a device. See Exhibit C (showing "pending criteria").

Bexar County's Motion to Dismiss First Amended Complaint
*Michael A. Miller v. Bexar County*
5:23-cv-00085-OLG                                                                                                                                     8 of 14

17. On October 31, 2022, Plaintiff retained counsel, who filed an agreed motion to modify the conditions of his bond to remove the GPS condition. Exhibit A at 3 (second and fourth entries for 10/31/2022); Exhibit B at 3.[3] Thus, on October 31, 2022, Plaintiff had not met the GPS condition for his release on bond. On November 1, 2022, Plaintiff was released from jail. Exhibit A at 3 (first entry for 11/1/2022).

18. Given that Plaintiff's release was pending his satisfaction of the GPS condition imposed by Magistrate Judge Ramirez, it cannot be plausibly asserted that any injury from a delayed release was caused by Bexar County's alleged failure to "sign off on Plaintiff's release" after being fitted with a GPS device. Docket no. 8 at 5, 10. Plaintiff Miller did not meet the criteria for being assigned a GPS nor was he actually fitted with it. Notably, Plaintiff misstates the Texas law regarding release on bond, asserting that it states a defendant "'shall at once be set at liberty' upon payment of bond" (docket no. 1 at 10), whereas the law *actually* reads: "When the accused has *given* the required bond . . . he shall at once be set at liberty." Tex. Code Crim. Proc. § 17.29(a) (emphasis added). It cannot plausibly be asserted that Plaintiff's injuries are attributable to a "policy and practice of refusing immediate release to individuals that have posted their bonds and are otherwise entitled to a timely release from custody," as Plaintiff was not entitled to being released until fitted with a GPS device.

---

[3] Bexar County attaches hereto Exhibit B, comprising (1) Judge Ramirez's special conditions of release on bond and (2) Plaintiff's counsel's "Unopposed Motion to Modify Bond Conditions to Remove GPS Conditions and Agreed Order." The Court can "consider any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *330 Cedron Tr.*, 2015 WL 1566058, at *2 (W.D. Tex. Apr. 8, 2015) (citations omitted; see note 1 above). Plaintiff's allegation that "there was no judicial order mandating [Plaintiff's] confinement" (docket no. 1 at 10) constitutes a reference to an order, Judge Ramirez's special conditions of release on bond, that actually does exist, and the Court properly may consider it. Plaintiff's allegation that he "did not have any holds or warrants" is a reference to any holds, such as a GPS condition, that might exist. Thus, the Court properly may consider Plaintiff's counsel's motion to modify the GPS "hold" that existed.

Bexar County's Motion to Dismiss First Amended Complaint
*Michael A. Miller v. Bexar County*
5:23-cv-00085-OLG                                                                                              9 of 14

19.     In sum, the documents incorporated into and referenced by Plaintiff's First Amended Complaint show that the alleged delay in Plaintiff's release is attributable to his failure to meet the GPS condition of his bond.  Thus, Plaintiff fails to assert sufficient facts to show that the alleged Bexar County practice of not promptly releasing bail payers was the moving force behind the violation of his rights.  Plaintiff's Section 1983 claim against Bexar County should be dismissed.

### iii.    Plaintiff Miller Has Not Pleaded Facts Sufficient to Support a Viable Failure-to-Train or Supervise Claim

20.     Plaintiff Miller alleges that the Bexar County Sheriff's Office enacted a "policy that required the County's pretrial services to sign off on detainees being released" and "[w]ithout the signature of a pretrial services officer, a detainee with GPS conditions will not be released or fitted for a monitor even if the detainee has paid their bail."  Docket no. 8 at 11.  Plaintiff alleges that "[t]he Sheriff failed to train his deputies to obtain pretrial's signature on class member's release documents in order to process Plaintiff's release in a constitutionally permissible timeline." *Id*.

21.     "[I]n limited circumstances," a municipality may be directly liable under Section 1983 for failure to train.  *Snyder v. Trepagnier*, 142 F.3d 791, 795 (5th Cir. 1998) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989)); *but cf. Connick v. Thompson*, 563 U.S. 51, 61 (2011) (A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.").  Recovery on a failure-to-train theory requires a showing that "1) the sheriff failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Thompson v. Upshur Cty., TX*, 245 F.3d 447, 459 (5th Cir. 2001).  These elements encompass the "two fundamental requirements" for showing a municipality's Section 1983 liability on the basis of inadequate training or hiring: "culpability and causation[.]" *Snyder*, 142 F.3d at 795.  To

Bexar County's Motion to Dismiss First Amended Complaint
*Michael A. Miller v. Bexar County*
5:23-cv-00085-OLG                                                                                                                10 of 14

establish causation, Plaintiff must allege facts that show "a direct causal link between the municipal policy and the constitutional deprivation[.]" *Id.* To establish culpability, Plaintiffs must allege facts that show "that the city consciously enacted a policy reflecting 'deliberate indifference' to the constitutional rights of its citizens[.]" *Id.* Because a municipality's failure to train must reflect a "deliberate" or "conscious" choice to endanger constitutional rights, "proof of a single violent incident ordinarily is insufficient to hold a municipality liable for inadequate training." *Snyder*, 142 F.3d at 798. Instead, a plaintiff must plead and prove "at least a pattern of similar incidents in which the citizens were injured" and that the inadequacy of the training provided was both "obvious and obviously likely to result in a constitutional violation." *Snyder*, 142 F.3d at 798 (5th Cir. 1998); *Cozzo v. Tangipahoa Par. Council-President Gov't*, 279 F.3d 273, 287 (5th Cir. 2002) (quoting *City of Canton v. Harris*, 489 U.S. 378 (1989)).

22.     Here, because Plaintiff clearly has not pleaded "[a] pattern of similar constitutional violations by untrained employees[,]" he has not pleaded facts that show deliberate indifference, and dismissal of his municipal liability Section 1983 claims is therefore appropriate at this stage. *Pena*, 879 F.3d at 623 (affirming Rule 12(b)(6) dismissal of Section 1983 municipal liability claims on this basis (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011))).

23.     For the same reason, Plaintiff fails to plead facts sufficient to support 1983 liability on the basis of failure to supervise. To state a claim under this theory, the Plaintiff "must allege that '(1) the supervisor . . . failed to supervise . . . the subordinate official; (2) a causal link exists between the failure to . . . supervise and the violation of the plaintiff's rights; and (3) the failure to . . . supervise amounts to deliberate indifference.'" *Livezey v. City of Malakoff*, 657 F.App'x 274, 278 (5th Cir. 2016) (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998)). "[M]ore than a single instance of the lack of training or *supervision* causing a violation of constitutional rights

Bexar County's Motion to Dismiss First Amended Complaint
*Michael A. Miller v. Bexar County*
5:23-cv-00085-OLG                                                                                          11 of 14

is normally required before such lack of training or supervision constitutes deliberate indifference." *Thompson v. Upshur*, 245 F.3d at 459 (emphasis added). Plaintiff fails to allege with any specificity any instance of Bexar County's failure to supervise, other than the Plaintiff's experience. Dismissal of Plaintiff's claims based upon a failure-to-train or a failure-to-supervise theory is appropriate.

### B.    Dismissal of Plaintiff Perez's *Monell* Claim Is Appropriate

#### i.    Plaintiff Perez Does Not Plead Facts to Show An Official Policy or Practice, or to Support a Failure-to-Train or Supervise Claim

24.    Plaintiff Perez, like Plaintiff Miller, fails to plead facts to show a viable Section 1983 claim against Bexar County. Plaintiff Perez's allegations regarding the County's alleged policy of "not processing Plaintiff for release until County pretrial services signs off on the release when Plaintiff has posted bail" (docket no. 8 at 15) are wholly conclusory, and do not present a "'description of a policy or custom and its relationship to the underlying constitutional violation'" that "'contain[s] specific facts.'" *Pena*, 879 F.3d at 622 (citation omitted). Such description does nothing more than "describe the incident that gave rise to [their] injury[.]" *Hicks-Fields*, 860 F.3d at 808. Plaintiff alleges no other instances of such conduct, much less multiple instances that would constitute a pattern of similar incidents.

25.    Further, like Plaintiff Miller, Plaintiff Perez makes only general allegations regarding the County's alleged failure to train and failure to supervise that do not meet the pleading standard. Plaintiff Perez makes conclusory allegations such as "[t]he County failed to implement, supervise, and train on policies to prevent the overdetention of persons whose bails had been posted and were held without judicial authority." Docket no. 8 at 16. As discussed above, such basic, conclusory allegations, wholly void of reference to other instances of similar conduct, fail to establish

Bexar County's Motion to Dismiss First Amended Complaint
*Michael A. Miller v. Bexar County*
5:23-cv-00085-OLG                                                                                                              12 of 14

deliberate indifference, and dismissal of Plaintiff Perez's Section 1983 claims based on failure-to-train and failure-to-supervise theories is appropriate.

### ii. Plaintiff Perez Does Not Plead Facts to Show That an Alleged Unconstitutional Policy Was the "Moving Force" Behind Her Allegedly Prolonged Detention

26. Although Plaintiff Perez alleges that she "did not have any holds or warrants" (docket no. 8 at 14) that would restrict her right to be released after paying bond, the County records incorporated into and referred to in the First Amended Complaint show otherwise. Like Plaintiff Miller, Plaintiff Perez was detained because of an underlying domestic violence charge, and, like Plaintiff Miller, Plaintiff Perez had conditions of bond other than paying the stated bond amount. Plaintiff Perez was ordered not to contact the victim in her case, and was restricted from possessing a firearm. Exhibit D at 1. Prior to her release, Plaintiff was required to meet with Pretrial Services for counseling regarding the terms of her bond, which she completed in the early hours of December 10, 2022. Exhibit D at 1 (showing Plaintiff was counseled on December 10, 2022); *Id*. at 2 (showing Plaintiff Perez's bond was received at 9:10 p.m. on December 8, 2022, she was released at 3:08 a.m. on December 10, 2022, and her walkout time from the Bexar County Jail was 4:16 a.m. on December 10, 2022) Exhibit D at 2.

27. Thus, contrary to the assertions in her First Amended Complaint, Plaintiff was not simply entitled to be released after paying bond. She was required to meet with Pretrial Services regarding her bond conditions. Further, these records referred to and incorporated into Plaintiff Perez's First Amended Complaint negate that she was detained for as long as "an additional forty-eight (48) more hours" (docket no. 8 at 14) after paying her bail amount. Plaintiff presents no legal authority that such a delay, and for such reasons, is unconstitutional.

Bexar County's Motion to Dismiss First Amended Complaint
*Michael A. Miller v. Bexar County*
5:23-cv-00085-OLG                                                                                                 13 of 14

## IV.  CONCLUSION

In their First Amended Complaint, neither Plaintiff alleges sufficient facts to establish *Monell* liability against Bexar County.  Plaintiffs' claims against Bexar County therefore should be dismissed pursuant to Rule 12(b)(6).

        Respectfully Submitted,
        JOE GONZALES
        Bexar County Criminal District Attorney

By:    /s/ Robert W. Piatt III
        **ROBERT W. PIATT III**
        Bar No. 24041692
        Assistant District Attorney, Civil Division
        101 W. Nueva, 7th Floor
        San Antonio, Texas 78205
        Phone: (210) 335-0785
        Fax: (210) 335-2773
        robert.piatt@bexar.org
        *Attorney for Bexar County*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on the 29th day of March, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which provided electronic service upon all parties.

        /s/ Robert Piatt
        **ROBERT W. PIATT III**

Bexar County's Motion to Dismiss First Amended Complaint
*Michael A. Miller v. Bexar County*
5:23-cv-00085-OLG        14 of 14