FILED
March 25, 2024
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____NM_____
                    DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MICHAEL MILLER and ADRIANA GENEVIEVE PEREZ, Individually and on behalf of similarly situated individuals, | § § § § § | |
| Plaintiffs, | § § | CIVIL NO. SA-23-CV-00085-OLG |
| v. | § § | |
| BEXAR COUNTY TEXAS, | § § | |
| Defendant. | § § | |

# ORDER

Before the Court is Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Mot. to Dismiss, Dkt. No. 16.) Plaintiffs have responded (*see* Pls.' Resp., Dkt. No. 17), and Defendant has replied (*see* D.'s Reply, Dkt. No. 22). For the reasons discussed below, the Motion to Dismiss will be granted.

## BACKGROUND

Plaintiffs Michael Miller and Adriana Perez bring this class action under 42 U.S.C. § 1983 against Defendant Bexar County (the County) arising from their alleged over-detention in the Bexar County Jail. Plaintiffs assert the County's conduct violated their rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments[1] and that the County is liable for the violations due to its official policies and its failure to train and supervise the sheriff's deputies.

---

[1] The Court notes that, in one instance, Plaintiffs assert only that their Fourth and Fourteenth Amendment rights are at issue. (*See* Pls.' 2nd Am. Compl. at ¶ 113, Dkt. No. 15.) Additionally, the second amended complaint mentions "Texas state common law" and "Plaintiff's [sic] state law claims" (*see id.* at ¶¶ 6, 8), but the sole cause of action asserted therein arises under 42 U.S.C. § 1983.

***Factual Background.*** Plaintiffs' Second Amended Class Action Complaint includes the following allegations.[2] The Bexar County Sheriff's Office is operated by Sheriff Javier Salazar, who, as such, "is the final policymaker for all law enforcement decisions for Bexar County." (2nd Am. Compl. at ¶ 18.) These decisions include when to release detainees who have already posted bond. (*Id.* at ¶ 20.) Although a pretrial detainee is "theoretically" processed for release after posting bail, "[r]outinely, it can take 48 hours or more"—and "often times . . . up to ninety-six (96) hours"—until the detainee is released. (*Id.* at ¶ 23.)

Plaintiff Michael Miller was arrested on October 28, 2022, at 7:24 a.m. (*Id.* at ¶ 65.) At 12:31 p.m., Miller's bond was set by a magistrate judge. At 3:11 p.m., Miller's bond was posted. (*Id.* at ¶¶ 67–68.) Miller did not have any holds or warrants but was required to be fitted with a county-issued GPS/EM monitor. (*Id.* at ¶¶ 69, 71.) Though the County had GPS/EM monitors available, Miller was not immediately fitted with one. That evening, despite having posted his bond, Miller was not released but, instead, was transferred to general population. (*Id.* at ¶¶ 70.) Three days later, on November 1, 2022, Miller was transferred from general population to a holding cell, where he waited for hours to be released with other detainees who had made bail. (*Id.* at ¶¶ 74–75.)

Plaintiff Adriana Perez was arrested and taken before a magistrate judge on February 7, 2022. (*Id.* at ¶ 78.) Perez's bail was posted the next day, on February 8. (*Id.* at ¶ 79.) Like Miller, Perez did not have any holds or warrants and, thus, was "entitled to be released without delay."[3]

---

[2] Plaintiffs' well-pleaded allegations are accepted as true for purposes of the motion to dismiss. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] It is unclear whether Perez was required to be fitted with a GPS monitor as a condition of her release on bail.

(*Id.* at ¶ 80.) Perez remained in custody an additional two days after posting bond. (*Id.* at ¶¶ 81–85.)

***Procedural History.*** Miller initiated this action by filing his original class action complaint on January 24, 2023. (Dkt. No. 1.) He subsequently filed an advisory, in accordance with this Court's pre-filing procedure for Rule 12(b)(6) motions to dismiss,[4] signaling his intent to file an amended complaint. (Dkt. No. 7.) Miller and Perez filed their first amended class action complaint on March 7, 2023. (*See* Dkt. No. 8.) Plaintiffs then filed another advisory stating their intent to replead their claims (Dkt. No. 14), and on May 16, 2023, filed their second amended class action complaint, which they elected not to amend after a third round of conferring as to the County's proposed deficiencies in their pleading. (*See* Mot. at 15.)

The County filed the instant Motion, requesting dismissal of Plaintiffs' second amended complaint for failure to state a claim.

## LEGAL STANDARD

Dismissal is proper if the complaining party fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Claims may be dismissed under Rule 12(b)(6) "on the basis of a dispositive issue of law," *Neitzke v. Williams*, 490 U.S. 319, 326 (1989), or a plaintiff's failure to allege "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 555 (2007). The factual matter in the complaint must be pleaded with enough specificity to raise a right to relief "above the speculative level." *Twombly*, 550 U.S. at

---

[4]*See* Question 36, Court Fact Sheet for U.S. District Judge Orlando L. Garcia, *available at*: https://www.txwd.uscourts.gov/wp-content/uploads/2023/12/Court-Facts-Sheet-for-US-District-Judge-OLG-Jan-2024.pdf. This procedure requires counsel to confer with opposing counsel concerning the proposed deficiencies in the pleading and provides opposing counsel with an opportunity to amend a deficient pleading prior to the filing of a Rule 12(b)(6) motion to dismiss. Under this practice, because the plaintiff has already been provided notice of the proposed deficiencies and the opportunity to amend the pleading prior to the filing of a Rule 12(b)(6) motion to dismiss, he will not be allowed an additional opportunity to amend.

570. "Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—'that the pleader is entitled to relief.'" *Covington v. Cty. of Madisonville, Tex.*, 812 Fed. App'x 219, 223 (5th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In analyzing a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Id.* at 223–24 (quoting *McCartney v. First Cty. Bank*, 970 F.2d 45, 47 (5th Cir. 1992) (quotation marks omitted). The complaint need not contain detailed factual allegations, but it must set forth "more than labels and conclusions" and do more than merely restate the elements of a cause of action. *Twombly*, 550 U.S. at 555. While all well-pleaded facts are accepted as true, legal conclusions couched as factual allegations are not entitled to the assumption of truth. *Id.*; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In evaluating whether a plaintiff's claims survive dismissal under Rule 12(b)(6), the Court's factual inquiry is limited to (1) the facts set forth in the complaint; (2) documents attached to the complaint; (3) matters of which judicial notice may be taken; and (4) documents attached to a defendant's motion to dismiss that are referred to in the complaint and are central to the plaintiff's claims. *See Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). In their Response, Plaintiffs object to the Court's consideration of the documents attached to the County's Motion to Dismiss (*see* Pls.' Resp. at 3, Dkt. No. 17); however, the Court need not and does not consider the records attached to the County's Motion in reaching the instant ruling.

## ANALYSIS

Though never vicariously liable under 42 U.S.C. § 1983 for their employees' actions, a municipality may be liable under the statute if, "under color of some official policy," it *itself* subjects a person or causes a person to be subjected to a deprivation of rights. *Monell v. Dep't of Soc. Servs. of Cty. of N.Y.*, 436 U.S. 658, 692 (1978). In the instant action, Plaintiffs seek to hold the County liable for alleged violations of their constitutional rights, which they assert were caused by the County's own policies or customs and failure to train or supervise its employees.

### I. Policy or Custom Liability

To state a *Monell* claim premised on an official policy or custom, a plaintiff must plausibly allege three elements: (1) an official policy or custom; (2) a policymaker who can be charged with actual or constructive knowledge of the policy or custom; and (3) a violation of a constitutional right whose "moving force" is the policy or custom. *Guerra v. Castillo*, 82 F.4th 278, 290 (5th Cir. 2023) (quoting *Piotrowski v. Cty. of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)); *Webster v. Cty. of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc). The County contends that the amended complaint fails to present sufficient factual allegations to show the existence of a policy or custom that would support municipal liability. (Mot. at ¶ 8, Dkt. No. 16.) The Court agrees.

An official policy or custom may be shown in any of three ways: (a) a written policy statement, ordinance, or regulation; (b) a persistent, widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy; or (c) under rare circumstances, a single act done by an official or entity with "final policymaking authority." *Sweetin v. Cty. of Tex. Cty., Tex.*, 48 F.4th 387, 392 (5th Cir. 2022); *see Webster*, 735 F.2d at 841.

According to the amended complaint, the County has "a de facto policy of improperly delaying the release of detainees who have posted bond and are entitled to release [and] failing to

implement a system for the prompt release of detainees who have posted bond and are entitled to release." (2nd Am. Compl. at ¶ 107.) Stated differently, the County's liability is predicated on two alleged "widespread practices"—namely, (i) the County's use of a "batch release system" and (ii) the County's requirement that pretrial services sign off prior to the release of a detainee with a GPS/EM restriction. (*Id.* at ¶¶ 29, 109–10; Pls.' Resp. at 5.)

"But plausibly to plead a practice so persistent and widespread as to practically have the force of law, a plaintiff must do more than describe the incident that gave rise to his injury." *Pena v. Cty. of Rio Grande Cty.*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). Here, aside from the incidents concerning Miller and Perez, the second amended complaint only cites to one other instance, which occurred in 2017, concerning Cody Flenoury, a detainee who waited five months to be released after having been sentenced to time served following a plea agreement. (2nd Am. Compl. at ¶ 49.)

But Flenoury's case—"one of the more extreme examples"—is too dissimilar to lend factual support to their claim of a "significant pattern" of over-detention. (*Id.* at ¶ 29, 38.) A pattern requires "similarity and specificity," along with "sufficiently numerous prior incidents, as opposed to isolated instances." *Peterson v. Cty. of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) (citations omitted). Unlike Miller and Perez, Flenoury's over-detention occurred after receiving a sentence—he was not awaiting release on bond. As such, unlike Miller, Flenoury's release was not subject to a GPS/EM restriction.

Additionally, Plaintiffs merely allege that Flenoury's over-detention occurred "*in part*, because the County utilizes a batch release system where the County waited until it had a sufficient number of persons scheduled to be released." (2nd Am. Compl. at ¶ 41 (emphasis added).) While it may be plausible that such a "batch release system" could result in up to 72-hour delays in release

6

times, as in Miller and Perez's cases, it not plausible that the *five-month* delay in Flenoury's release was the result of deputies' waiting for "a critical mass" of detainees eligible for release.[5] (*Id.* at ¶¶ 75–76, 82, 86, 89.) Moreover, the news article referenced in the second amended complaint (*see id.* at ¶ 45) undercuts Plaintiffs' argument that Flenoury's case shows a pattern of over-detention by the County due to its alleged widespread "batch release system." In its very title, the article states that "[t]here's no clear answer to why" the Bexar County Jail detained Flenoury for five extra months.[6]

Because Plaintiffs' own alleged instances of over-detention are insufficient to carry their claims into the realm of plausibility, they have failed to state a claim under either theory against the County. Two occurrences do not reasonably support an inference that the County has engaged in a pattern of conduct that is so widespread and persistent as to constitute an official policy of over-detention. Without more, Plaintiffs' allegations to that effect are simply legal conclusions couched as factual allegations and, thus, not entitled to the presumption of truth. Accordingly, the Court finds that Plaintiffs have failed to state a plausible *Monell* claim against the County based on an official policy or custom.

## II. Supervisory Liability

Claims of failure to train or supervise may be brought against a municipality under *Monell*. *Hutcheson v. Dallas Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021); *Peterson v. Cty. of Fort Worth*, 588 F.3d 838, 849 (5th Cir. 2009) ("The failure to train can amount to a policy if there is deliberate

---

[5]"The Bexar County Adult Detention Center is the 16th largest jail in the country with a maximum housing capacity of 5,106 inmates. In 2020, with approximately 27,924 total bookings the BCADC averaged a daily population of 3,787." (2nd Am. Compl. at ¶ 20 (citation omitted).)

[6]Paul Flahive, *Bexar County Jail detained a man for 5 extra months. There's no clear answer to why*, Texas Public Radio (Oct. 12, 2021), https://www.tpr.org/criminal-justice/2021-10-12/bexar-county-jail-detained-a-man-for-5-extra-months-theres-no-clear-answer-to-why.

indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement."). A failure-to-train or failure-to-supervise claim under § 1983 has three elements: (1) the County failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to train or supervise and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights. *Burge*, 336 F.3d at 370.

The first element requires Plaintiffs to point to "specific deficiencies" in the County's training procedures. *Tarver v. Cty. of Denton, Tex.*, 633 F. Supp. 3d 864, 872 (N.D. Tex. 2022) (quoting *Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017)). In the second amended complaint, however, Plaintiffs generally allege failures by the sheriff to properly train or supervise his deputies to ensure the policies alleged by Plaintiffs did not occur—i.e., to ensure that the deputies promptly obtained GPS monitors and requisite signatures from pretrial services so as not to over-detain pretrial detainees with GPS/EM restrictions; and to ensure that his deputies processed releases in a constitutional manner (as opposed to the "batch release system"). These broad allegations alone are insufficient. *See, e.g., Blanchard-Daigle v. Geers*, 802 F. App'x 113, 119 (5th Cir. 2020); *Doe v. Edgewood Indep. Sch. Dist.*, No. 5:16-CV-01233-OLG, 2018 WL 11602733, at *4 (W.D. Tex. May 9, 2018); *Sanchez v. Gomez*, 283 F. Supp. 3d 524, 545 (W.D. Tex. 2017) (holding that plaintiffs' failure-to-train claim could survive motion to dismiss because the complaint contained specific allegations relating to "the specific topic of the challenged policy or training inadequacy" and, thus, provided the City with adequate notice of the claims against it) (quoting *Schaefer v. Whitted*, 121 F. Supp. 3d 701, 719–20 (W.D. Tex. 2015)). Plaintiffs' second amended complaint fails to provide non-conclusory statements or identify specific inadequacies in the County's

policies. Therefore, the Court finds that Plaintiffs have failed to state a plausible *Monell* claim against the County based on failure to properly train or supervise the sheriff's deputies.

## CONCLUSION & ORDER

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint (Dkt. No. 16) is **GRANTED**, and the claims in Plaintiffs' Second Amended Class Action Complaint (Dkt. No. 15) are hereby **DISMISSED**.

This case is **CLOSED**.

It is so **ORDERED**.

**SIGNED** this \_\_15\_\_ day of March, 2024.

ORLANDO L. GARCIA
United States District Judge